UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ALEXANDER RIALS,<br><br>    Plaintiff,<br><br>v.<br><br>DAISY AVALOS,<br><br>    Defendant. | Case No. 16-cv-04771-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 26 |

## INTRODUCTION

Plaintiff James Alexander Rials, a California prisoner currently incarcerated at California Medical Facility in Vacaville, CA, filed this *pro se* civil rights action under 42 U.S.C. § 1983. Plaintiff was previously incarcerated at Salinas Valley State Prison ("SVSP"), and alleges that, during his incarceration at SVSP, SVSP Officer Avalos violated his constitutional rights. *See* Dkt. No. 15. Now pending before the Court is Defendant Avalos's motion for summary judgment. Dkt. No. 26. Plaintiff has filed an opposition, Dkt. Nos. 35 and 36, and Defendant Avalos has filed a reply, Dkt. No. 39. For the reasons set forth below, the Court GRANTS Defendant Avalos's motion for summary judgment.

## FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted.

During the relevant time period, Rials was housed at SVSP. Dkt. No. 15 at 4. Rials is a practicing Muslim of the Moorish Science Temple of America ("MST of A"). Dkt. No. 15 at 16. As part of his religious practice, Rials prays up to five times daily. Dkt. No. 35 at 21. Rials sincerely believes that his religion requires him to carry a photo of the Holy Prophet Noble Drew Ali so that he can observe the Prophet when he prays. Dkt. No. 35 at 8.

United States District Court
Northern District of California

1    Officer Avalos is an SVSP correctional officer. During the relevant time period, Officer Avalos was one of three to six correctional officers stationed at the entrance to Facility C recreation yard who conducted clothed body searches (patdowns) of inmates. Dkt. No. 35 at 22 and Dkt. No. 26-1 ("Avalos Decl.") at ¶ 2.

On or about March 8, 2016, Officer Avalos stopped Rials at the entrance to the Facility C recreation yard. Dkt. No. 35 at 22.

According to Officer Avalos, in the course of her search, she found multiple personal photos inside the folders which Rials was carrying to his work assignment. She did not understand the photos to be religious in nature. ECF No. 26 at 3. Officer Avalos verbally reminded Rials that he was not allowed to bring personal items outside his cell during his working hours. Avalos Decl., Ex. A.

According to Rials, Officer Avalos chose only to search him rather than other inmates entering and exiting the Facility C recreation yard. Rials informed Officer Avalos that the two photos were of the Holy Prophet Noble Drew Ali, and were used for daily religious observation and practice. Dkt. No. 15 at 3, and Dkt. No. 35 at 3, 22. Officer Avalos did not offer him a reasonable accommodation for his religious needs. Dkt. No. 35 at 22. Officer Avalos never informed Rials that he was free to leave the photos in his cell and use them when praying in his cell, or that he could leave his assigned job to pray in his cell. Dkt. No. 35 at 8.

On March 15, 2016, Officer Avalos was again stationed at the entrance to Facility C yard. Avalos Decl., ¶ 2. As part of her duties that day, she conducted patdown checks of all inmates entering the yard or returning to the program building to ensure that inmates were not transporting drugs, contraband, or other prohibited items between the yard and program building. Inmates can barter or exchange such items, or assault one another with secreted weapons. Avalos Decl., ¶ 2. Officer Avalos regularly checked seemingly innocuous items, such as paper, for contraband, having learned through training and experience that drugs are sometimes flattened and glued between two pieces of paper. Avalos Decl., ¶ 2. At 10:45 am that day, Officer Avalos conducted a clothed body search of Rials as he returned from his job assignment to the Facility C yard. Avalos Decl., ¶ 3. Officer Avalos patted Rials down for weapons or contraband and also

2

inspected the folders that Rials had carried to his work assignment. Avalos Decl., ¶ 3. In the course of the patdown, Officer Avalos found photos in Rials's folders. Avalos Decl., ¶ 3. Officer Avalos did not confiscate the photos. Avalos Decl., ¶ 5.

According to Officer Avalos, the photos depicted semi-clad women, and she did not understand these photos to be religious in nature. Avalos Decl., ¶ 3. Officer Avalos admonished Rials that possession of personal property, including photos, outside his cell violated prison rules. Avalos Decl., ¶ 4.

According to Rials, Officer Avalos again chose only to search him rather than other inmates entering and exiting the Facility C recreation yard. Dkt. No. 35 at 22. The photos discovered in his folder were of the Holy Prophet Noble Drew Ali, and Rials informed Officer Avalos that these photos were used for daily religious observation and practice. Dkt. No. 35 at 3. Officer Avalos demanded that Rials not bring any personal items outside his cell. Dkt. No. 15 at 4. Officer Avalos again did not offer him a reasonable accommodation for his religious needs. Dkt. No. 35 at 8, 22.

Because it was Rials's second violation of the same rule, Officer Avalos issued Rials a counseling chrono rules violation report, which is an institutional write-up documenting the encounter but not requiring further discipline, for the possession of personal property outside his cell. Avalos Decl., ¶ 5, Ex. A. Plaintiff did not lose credit or privileges as a result of this counseling chrono. Avalos Decl., ¶ 5, Ex. A.

Rials alleges that, prior to and after March 2016, Rials witnessed Officer Avalos finding personal religious items on the persons of other inmates, yet did not require those inmates to leave their religious items in their cells. Dkt. No. 15 at 4.

**DISCUSSION**

**A.  Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material

3

fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**B. Analysis**

    **1. Free Exercise Claim**

Officer Avalos argues that she is entitled to summary judgment with respect to Rials' Free Exercise claim because the counseling chrono did not substantially burden Rials's ability to exercise his religion or result in credit forfeiture or privilege restriction; because Rials is free to use and observe the photos in his cell; and because the patdowns are reasonably related to the legitimate penological interest of ensuring that prisoners are not transporting drugs or contraband. Dkt. No. 26 at 4–5 and Dkt. No. 39 at 2–3. Rials argues that the counseling chrono burdened his ability to exercise his religion because it prevented him from using his photos when he prayed

4

outside his cell. Dkt. No. 35 at 8–9.

Rials states that he sincerely believes that his religion requires him to pray five times daily while observing a photo of the Holy Prophet Noble Drew Ali, and that he therefore is required to keep photos of the Prophet on his person. Dkt. No. 35 at 8. Rials has provided evidence that his belief is rooted in religious belief. Dkt. No. 35 at 30–32 (MST of A practitioner "prays both day and night" and a wallet-size picture of the Holy Prophet Noble Drew Ali is MST of A religious item). Accordingly, Rials has raised a viable claim under the Free Exercise Clause.[1] *See Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (a belief must be both "'sincerely held'" and "'rooted in religious belief'" to implicate the Free Exercise Clause) (quoting *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981)); *Shakur v. Schriro*, 514 F.3d 878, 885 (9th Cir. 2008) ("sincerity test set forth in *Malik* . . . determines whether the Free Exercise Clause applies").

In order to establish a free exercise violation, a prisoner must show that a defendant substantially burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989) ("The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden."). In evaluating Rials's free exercise claim the Court must therefore determine whether Rials's religious practice is substantially burdened by Officer Avalos's requirement that Rials leave his photos of the Holy Prophet Noble Drew Ali[2] in his cell, and, if this restriction constitutes a substantial burden, whether this restriction is reasonably related to legitimate penological interests.

---

[1] Officer Avalos also argues that she is entitled to summary judgment on the Free Exercise claim because Rials did not allege that he sincerely believed that his religion requires him to carry the photographs at all times. Dkt. No. 26 at 5. However, the amended complaint's allegation that the two photos were used for daily religious observation and practice can be liberally construed as alleging that Rials sincerely believed that the photos were required to be on his person in order to practice his religion. Dkt. No. 15 at 3. In addition, Rials specifically makes such an allegation in his opposition. Dkt. No. 36 at 8–9. Moreover, the failure to make such an allegation would not entitle Officer Avalos to summary judgment; it would only require the Court to dismiss the complaint with leave to amend to add the allegation.

[2] Because the Court must view the evidence in the light most favorable to the non-moving party at summary judgment, the Court presumes that the photos were of the Holy Prophet Noble Drew Ali, as alleged by Rials, and not of semi-clad women, as alleged by Officer Avalos.

"In order to reach the level of a constitutional violation, the interference with one's practice of religion must be more than an inconvenience; the burden must be substantial[.]" *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997) (citation and internal quotation marks omitted), *overruled in part on other grounds by Shakur*, 514 F.3d at 884–85; *see also Guru Nanak Sikh Soc. of Yuba City v. Cty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (". . . a substantial burden must place more than an inconvenience on religious exercise") (internal quotation marks and citation omitted). A substantial burden exists where the state "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs[.]" *Thomas v. Review Board*, 450 U.S. 707, 718 (1981). Officer Avalos argues that requiring Rials to keep his photos of the Prophet in his cell did not substantially burden his ability to exercise his religion because the counseling chrono did not result in either credit forfeiture or restriction in privileges; and because Rials is free to use the photos in his cell. Rials argues that Officer Avalos never informed him that he is free to leave the photos in his cell and pray in his cell, or free to leave his assigned job to pray.

To the extent that Rials is arguing that Officer Avalos did not allow him to pray in his cell because she failed to explicitly state that Rials retained the ability to pray in his cell while observing the photos, this argument is without merit. Officer Avalos did not confiscate the photos; she instructed Rials to leave the photos in his cell; and she did not prohibit Rials from praying in his cell. Officer Avalos's actions cannot reasonably be interpreted as prohibiting Rials from praying in his cell. Office Avalos's argument that the issuance of the counseling chrono was not a substantial burden because Rials did not suffer credit forfeiture or privilege restriction does not address the relevant issue. The relevant question is whether Rials is forced to violate his religious beliefs because he is required to leave his photos in his cell, regardless of whether he suffered disciplinary consequences.

The Court finds that there is a genuine issue of material fact as to whether the restriction substantially burdens Rials's religious practice of praying five times daily while observing a photo of the Holy Prophet Noble Drew Ali. It is unclear from the record whether the requirement that Rials keep the photos in his cell merely inconveniences him, or places a substantial burden on him. If Rials spends significant time away from his cell, whether for his job assignment or to

6

1 utilize the dayroom or recreation yard during the hours they are available to him, the requirement that Rials return to his cell to fulfill his prayer obligation is arguably a substantial burden because it could require Rials to choose between observing his sincerely held religious beliefs and his job, dayroom time, or yard time. Similarly, if Rials's job assignment and the prison recreation schedule keep him from his cell only for brief time periods, it is possible that the restriction is merely an inconvenience.

Assuming arguendo that the restriction constitutes a substantial burden, it is constitutional if the restriction is reasonably related to legitimate penological interests. However, the record is silent as to why the photos must be kept in Rials's cell. Officer Avalos argues that patdown searches are necessary to ensure that inmates are not transporting drugs or contraband between the yard and program building. ECF No. 39 at 3. However, the restriction at issue is not patdown searches, but rather the requirement that Rials keep his photos of the Holy Prophet Noble Drew Ali in his cell at all times. Although Officer Avalos states that pieces of paper can contain drugs, there is nothing in the record indicating that inmates may not carry paper on their persons outside of their cells.

A genuine issue of material fact therefore remains as to whether requiring Rials to keep his photos of the Holy Prophet Noble Drew Ali in his cell at all times substantially burdens his sincerely held religious belief and whether the restriction is reasonably related to legitimate penological interests. Accordingly, the Court must deny summary judgment with respect to the Free Exercise claim unless Rials is entitled to qualified immunity with respect to this claim.

### 2. Equal Protection Claim

#### a. Standard

When challenging his treatment with regard to other prisoners, courts have held that in order to present an equal protection claim a prisoner must allege that his treatment is invidiously dissimilar to that received by other inmates. *More v. Farrier*, 984 F.2d 269, 271–72 (8th Cir. 1993) (absent evidence of invidious discrimination, federal courts should defer to judgment of prison officials). Where state action does not implicate a suspect classification, the plaintiff can establish an equal protection "class of one" claim by demonstrating that the state actor

7

1    (1) intentionally (2) treated him differently than other similarly situated persons, (3) without a

2    rational basis. *Gerhart v. Lake County Montana*, 637 F.3d 1013, 1020 (9th Cir. 2011) (citing

3    *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). "The class-of-one

4    doctrine does not apply to forms of state action that 'by their nature involve discretionary

5    decisionmaking based on a vast array of subjective, individualized assessments.'" *Towery v.

6    Brewer*, 672 F.3d 650, 660 (9th Cir. 2012) (citing *Engquist v. Oregon Dep't of Agric.*, 553 U.S.

7    591, 603 (2008)). In such cases it is not a violation of equal protection when one person is treated

8    differently from others, because treating like individuals differently is an accepted consequence of

9    the discretion granted. *Engquist*, 553 U.S. at 603 (discussing the issuance of speeding tickets and

10   employment decisions as examples of discretionary decisionmaking). However, where there is a

11   pattern of generally exercising the discretion in a manner that treats the complaining individual

12   less favorably than others, the class-of-one doctrine applies. *Towery*, 672 F.3d at 660–61.

### b. Discussion

Officer Avalos argues that she is entitled to summary judgment on the equal protection claim because the patdowns constitute discretionary decision making by a state actor. She also argues that she did not intentionally treat Rials differently. Rials argues that because Officer Avalos searched all inmates, the patdowns cannot be considered discretionary decision making. He further argues that Officer Avalos regularly exercised her discretion in a discriminatory manner, and allowed other inmates to possess personal religious items outside their cells.

Both parties incorrectly focus on the patdowns. The alleged Equal Protection violation was Officer Avalos's refusal to allow Rials to carry his religious photos outside his cell. The question therefore is whether Officer Avalos's determination that Rials's photos were not religious in nature was a discretionary decision. The Court agrees with Officer Avalos that determining whether an inmate's personal property is religious in nature requires her to exercise her judgment and discretion. Officer Avalos had to assess both the photographs and Rials's credibility when he informed her that the photos were religious in nature, and weigh it against her experience and knowledge. The inmate declarations submitted by Rials also support a finding that the determination of what items could be carried outside the cell is individualized and subjective.

Officer Avalos told inmate Bey to "take home" his religious items if he was not on his yard, but allowed inmate Brown to keep his religious items on his person. Dkt. No. 35 at 25–28. Similarly, the inmate declarations do not create a genuine dispute of material fact as to whether Officer Avalos had a pattern of exercising her discretion in a manner that resulted in different and detrimental treatment for Plaintiff alone. Rials's assertion in his amended complaint that he witnessed Officer Avalos allow other inmates to keep religious items on their persons does not establish a pattern of differential treatment of Rials. The record shows that at least one other inmate, inmate Bey, was also asked to keep his religious items in his cell. The amended complaint's conclusory allegation that Officer Avalos singled out Rials is contradicted by Bey's declaration, and insufficiently supported by evidence. This allegation is insufficient, by itself, to create a genuine issue of material fact. *See, e.g., F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

Viewing the evidence in the light most favorable to Rials, the Court finds that there is no triable issue as to whether Officer Avalos's determination that Rials's photos were not religious in nature constituted discretionary decisionmaking, or as to whether there was a pattern of Officer Avalos exercising this discretion in a manner that treated Rials alone differently and detrimentally. Accordingly Rials has failed to state a cognizable Equal Protection class-of-one claim. The Court GRANTS summary judgment in favor of Officer Avalos with respect to the Equal Protection claim.

### 3. Qualified Immunity

Qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). To determine whether a government official is entitled to qualified immunity, the Court must consider (1) whether the official's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232. Courts are not required

9

to address the two qualified immunity issues in any particular order, and instead may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

The doctrine of qualified immunity attempts to balance two important and sometimes competing interests — "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. The doctrine thus intends to take into account the real-world demands on officials in order to allow them to act "swiftly and firmly" in situations where the rules governing their actions are often "voluminous, ambiguous, and contradictory." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). "The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Id.*

### a. Free Exercise Claim

Officer Avalos argues that she is entitled to qualified immunity on the Free Exercise claim because the issuance of the counseling chrono did not violate Rials's right to free exercise of his religion. Rials argues that Officer Avalos is not entitled to qualified immunity because she reprimanded Rials, issued the counseling chrono, and restricted Rials from carrying the photos on his person despite knowing that the photos were religious in nature. Officer Avalos again incorrectly focuses on the counseling chrono. The alleged violation of the Free Exercise clause is Officer Avalos's refusal to allow Rials to keep his religious photos, needed for daily prayer, on his person. The question is whether Officer Avalos's refusal is entitled to qualified immunity.

Because it is unclear whether Officer Avalos's action violated a constitutional right, the Court turns to the second prong of the qualified immunity analysis. With respect to the second prong, the Supreme Court has held that "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *City and County of San Francisco,*

10

*Cal. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (omission in original) (internal quotation marks omitted). This is an "exacting standard" which "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).

> [E]xisting precedent must have "placed beyond debate the unconstitutionality of" the officials' actions, as those actions unfolded in the specific context of the case at hand. *Taylor*, 135 S. Ct. at 2044. Hence, a plaintiff must prove that "precedent on the books" at the time the officials acted "would have made clear to [them] that [their actions] violated the Constitution." *Id.* at 2045.
>
> As the Supreme Court again stressed recently, "[t]he dispositive question is 'whether the violative nature of [the defendants'] *particular* conduct is clearly established.'" *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam) (quoting *al-Kidd*, 131 S.Ct. at 2084). Moreover, "[t]his inquiry 'must be undertaken in light of the *specific context* of the case, not as a broad general proposition.'" *Id.* (emphasis added) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

*Hamby v. Hammond*, 821 F.3d 1085, 1090–91 (9th Cir. 2016) (alterations and emphasis in original). The "fact-specific, highly contextualized nature of the 'clearly established' analysis" applies, regardless of the constitutional right at issue. *Hamby*, 821 F.3d at 1092. In *Hamby*, the plaintiff alleged that prison doctors were deliberately indifferent in pursuing a nonsurgical course of care for his hernia. In assessing qualified immunity, defining the relevant right as a right to be free from deliberate indifference to medical needs would be too general, and would "repeat the same error the Supreme Court has time and again felt compelled to correct." *See id.* at 1095. Rather, the correct inquiry was whether, at the time of the alleged wrongdoing, it was "'beyond debate' that the prison officials pursued a medically unreasonable course of treatment by declining to refer [plaintiff] for a surgical evaluation." *Id.* at 1092. More recently, in an excessive-force case where officers shot a woman who was holding a knife and ignoring officers' orders to drop the weapon, the Supreme Court stated that "it [did] not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018).

Here, the question is not whether, on March 8, 2016, the law prohibited prison officials from burdening an inmate's religious practice. This would be defining the relevant right too

11

generally and would "repeat the same error the Supreme Court has time and again felt compelled to correct." *See Hamby*, 821 F.3d at 1094. The question is a narrower one, tied to the specific facts of this case: viewing the evidence in the light most favorable to Rials, and given existing case law at that time, was it beyond debate that it was unconstitutional to limit an inmate's individual prayer practice to his cell?

The Court has not located, and Plaintiff has not identified, any controlling law in place in March 2016 that held that limiting an inmate's individual prayer practice to his cell constituted a substantial burden in violation of the Free Exercise Clause.[3] Officer Avalos is therefore entitled to summary judgment in her favor on her qualified immunity defense with respect to the Free Exercise Clause claim.

### b. Equal Protection Claim

Officer Avalos is also entitled to summary judgment in her favor on her qualified immunity defense with respect to Rials's equal protection claim because the Court has found that no constitutional violation occurred. *See Aguliera v. Baca*, 510 F.3d 1161, 1167 (9th Cir. 2007) ("If we determine . . . that no constitutional violation occurred, the qualified immunity inquiry is at an end.").

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Avalos's motion for summary judgment. Dkt. No. 26. The Clerk shall terminate Docket No. 26, enter judgment in favor of Defendant Avalos, and close the file.

---

[3] Officer Avalos argues that she reasonably believed that her conduct was lawful because, at the time of the relevant events, the temporary deprivation of a religious property was not a substantial burden, citing to *Harry v. Ariz. Dep't of Corr.*, No. CV-10-0736-TUC-CKJ, 2014 WL 12689232, at *6 (D. Ariz. Aug. 19, 2014), and *Jones v. Burk*, No. 1:06-CV-00665, 2010 WL 4967710, at *9 (E.D. Cal. Dec. 1, 2010). Only Supreme Court and circuit precedent, and not district court cases, constitute clearly established law in the qualified immunity analysis. *See Community House, Inc. v. Bieter*, 623 F.3d 945, 967 (9th Cir. 2010) ("To determine whether a right was clearly established, a court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act.") (citing *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)); *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004) (same). In addition, these cases are not on point. *Harry* addresses the temporary deprivation of a religious property while it is being inventoried, and *Jones* addresses the requirement that the inmate obtain religious items from certain authorized sources. This case is distinct because Rials is deprived of his religious items whenever he leaves his cell.

**IT IS SO ORDERED.**

Dated: 9/28/2018

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge